NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

---

BRUCE EVANS, *Plaintiff/Appellee,*

*v.*

FATIMA FERNANDEZ, et al., *Defendants/Appellees.*

---

CITIZENS FOR SENSIBLE DEVELOPMENT, *Real Party in Interest/Appellant,*

No. 1 CA-CV 25-1068 A

FILED 06-17-2026

---

Appeal from the Superior Court in Yavapai County
No. S1300CV202500844
The Honorable John David Napper, Judge

**AFFIRMED**

---

COUNSEL

Statecraft PLLC, Phoenix
By Kory A. Langhofer, Thomas J. Basile
*Counsel for Plaintiff/Appellee*

Town of Prescott Valley, Prescott Valley
By J. Ivan Legler, Steven George Zraick
*Counsel for Defendant/Appellee*

By William M. Hathaway, Dewey
*Counsel for Real Party in Interest/Appellant*

---

**MEMORANDUM DECISION**

Presiding Judge Michael S. Catlett delivered the decision of the Court, in which Judge Angela K. Paton and Judge Jennifer M. Perkins joined.

---

**C A T L E T T**, Judge:

¶1　　　　Citizens for Sensible Development (the "Committee") sought to refer Prescott Valley Town Ordinance No. 2025-954 (the "Ordinance") to a vote of the municipal electorate. After the Committee collected enough signatures to refer the Ordinance, Bruce Evans ("Evans") moved to enjoin government officials from placing the referendum on the ballot. Evans argued the Committee's serial number application did not strictly comply with A.R.S. § 19-111(A) because the Committee did not include a copy of the Ordinance with its application. The Committee responded that it had included a copy of the Ordinance. In the alternative, the Committee argued that § 19-111(A), as applied, violates the Arizona Constitution.

¶2　　　　After a bench trial, the superior court found the Committee did not include a copy of the Ordinance with its application. The Committee, therefore, did not strictly comply with § 19-111(A). The Court also rejected the Committee's as-applied constitutional challenge. Based on these findings and conclusions, the court permanently enjoined the referendum from appearing on any ballot.

¶3　　　　Substantial evidence supports the superior court's factual finding that the Committee did not include a copy of the Ordinance with its application. So the Committee did not strictly comply with § 19-111(A). And the court concluded correctly that the Committee did not make the necessary showing to prevail on an as-applied constitutional challenge. We affirm the court's injunction.

## FACTS AND PROCEDURAL HISTORY

¶4　　　　On May 22, 2025, the Prescott Valley Town Council approved the Ordinance, which conditionally rezoned certain real property in the Town of Prescott Valley ("Town") from residential to industrial. The next day, Patricia Betzhold ("Betzhold") visited the Town Clerk's office and obtained a signed copy of the Ordinance from the Deputy Town Clerk. The

Deputy Town Clerk testified that the copy she gave Betzhold did not include the Town's embossed seal.

¶5          On May 28, 2025, the Committee's chairperson and treasurer visited the Town Clerk's office and applied for a serial number for a referendum petition. An Administrative Specialist ("Specialist") was the only employee present when the Committee's representatives arrived. The Specialist texted the Town Clerk and the Deputy Town Clerk. The Deputy Town Clerk returned to the office and processed and accepted the Committee's application.

¶6          The Deputy Town Clerk gave the Committee's representatives a signed copy of the Ordinance. After doing so, the Deputy Town Clerk also scanned and placed a copy of the application on the Town Clerk's desk. That version included the Town's embossed seal. The Committee later filed a referendum petition containing enough signatures to refer the Ordinance to the ballot.

¶7          Evans sued the Town Clerk, every member of the Prescott Valley Town Council, the Yavapai County Board of Supervisors, and the Committee. Evans asserted a single claim under A.R.S. § 19-122(C), which provides that "[a]ny person may contest the validity of an initiative or referendum" and "may seek to enjoin" an elections officer "from certifying or printing the official ballot for the election that will include the proposed initiative or referendum measure[.]" Evans alleged the Committee's serial number application "filed with the Town Clerk . . . did not include, and was not simultaneously filed with, a copy of the Ordinance's text." As a result, Evans continued, the "serial number application did not strictly comply with A.R.S. § 19-111(A)" and "[a]ll signatures contained in the Referendum Petition . . . are invalid[.]" Evans asked the court to enjoin the defendants "from certifying or printing" the Committee's referendum "on the ballot in any primary, general, or special election in the" Town.

¶8          The Committee defended against Evan's claim on two grounds. First, the Committee maintained it strictly complied with § 19-111(A) by filing a copy of the Ordinance with its serial number application. Second, the Committee argued that disqualifying its referendum by requiring it to provide a copy of the Ordinance with its application violated the Arizona Constitution.

¶9          After the parties submitted trial briefing and stipulated facts, the superior court held a one-day bench trial. Evans called the Town Clerk,

Deputy Town Clerk, and Specialist to testify. The Committee called Betzhold, and its chairperson and treasurer as witnesses.

¶10          Post-trial, the superior court entered findings of fact and conclusions of law. On whether the Committee strictly complied with § 19-111(A), the court found "that the serial number application did not include a copy of the Ordinance." Based on that finding, the court concluded the Committee's referendum petition "is legally insufficient, and the referendum cannot qualify for placement on the ballot." On the Committee's as-applied constitutional challenge, the court determined the Committee "presented no evidence that strictly complying with [§ 19-111(A)]—i.e., submitting a copy of the Ordinance with its serial number application—would have imposed *any* burden, let alone an unreasonable one." So § 19-111(A) is not unconstitutional as applied. The court permanently enjoined the defendants from "certifying or printing" the referendum "on the ballot in any primary, general, or special election."

¶11          The Committee appealed timely. We have jurisdiction. *See* A.R.S. §§ 12-2101(A)(1), (A)(5)(b).

## DISCUSSION

¶12          The Committee presses two arguments. First, the court erred in concluding that it did not strictly comply with § 19-111(A). Second, § 19-111(A), as applied here, violates the Arizona Constitution. We address those two arguments in that order.

### I.      Strict Compliance with § 19-111(A)

¶13          Resolving the Committee's challenge to the superior court's strict-compliance conclusion has a factual and legal component.

#### A.      Factual component

¶14          The superior court's conclusion that the Committee did not strictly comply with § 19-111(A) flows from its factual finding that the Committee's application did not include a copy of the Ordinance. So we first ask whether that finding was supported by substantial evidence. We conclude it was.

¶15          After a bench trial, "we review the evidence in a light most favorable to sustaining the verdict," and will accept the superior court's factual findings unless clearly erroneous, "giving due regard to the opportunity of the court to judge the credibility of witnesses." *Castro v.*

*Ballesteros-Suarez*, 222 Ariz. 48, 51 ¶ 11 (App. 2009); Ariz. R. Civ. P. 52(a)(6). "A finding of fact is not clearly erroneous if substantial evidence supports it, even if substantial conflicting evidence exists." *Castro*, 222 Ariz. at 51–52 ¶ 11. Substantial evidence exists if a reasonable person could reach the same result as the superior court. *Id.* at 52 ¶ 11.

¶16 Not only did the superior court find that the Committee did not include a copy of the Ordinance with its application, but the court helpfully explained the basis for that conclusion. The court relied on the Deputy Town Clerk's testimony that the Committee's representatives filed only a single page, without attaching the Ordinance. The court concluded that the Specialist's testimony corroborated the Deputy Town Clerk's testimony. The Specialist testified she witnessed the filing and that the Committee's representatives filed one page, without the Ordinance. The court found the Deputy Town Clerk and Specialist to be credible witnesses.

¶17 The court also explained that the Deputy Town Clerk testified that she scanned the Committee's filing without altering it. That scanned copy, the court determined, "is the most contemporaneous, objective reflection of the contents of the serial number application, and is therefore highly probative of its contents." Neither that copy nor the copy placed on the Town Clerk's desk included the Ordinance.

¶18 What is more, the Deputy Town Clerk gave the Committee's representatives a copy of the Ordinance the same day they filed the application. In the court's view, "it would make little sense for the Committee to file a copy of the Ordinance and simultaneously request a copy of" the Ordinance. Moreover, the copy of the Ordinance the Town Clerk possessed included an embossed seal. But the Committee did not possess that version until the day of filing. The court found that "fact is in tension with the Committee's claim to have filed with the Town Clerk on May 28, 2025 the copy of the Ordinance that Betzhold received from the Town Clerk on May 23, 2025 (i.e., the version without an embossed seal)."

¶19 To be sure, the Committee presented testimony and evidence contradicting Evans' evidence. But the court weighed the parties' conflicting evidence and the credibility of the testifying witnesses and found that the Committee's application did not include the Ordinance. Substantial evidence supports that finding, so we affirm it. *Castro*, 222 Ariz. at 51–52 ¶ 11; Ariz. R. Civ. P. 52(a)(6).

## B.     Legal component

**¶20**         We next ask whether the court correctly concluded that the Committee did not strictly comply with § 19-111(A).  The court was again correct.

**¶21**         We review legal questions de novo.  *Castro*, 222 Ariz. at 52 ¶ 12; *Ariz. Bd. of Regents v. Phx. Newspapers, Inc.*, 167 Ariz. 254, 257 (1991). We interpret statutes "according to the plain meaning of the words in their broader statutory context," unless directed to do otherwise.  *S. Ariz. Home Builders Ass'n v. Town of Marana*, 254 Ariz. 281, 286 ¶ 31 (2023).  "Clear and unequivocal language determines a statute's meaning, reading each word, phrase, clause, and sentence in such a way to ensure no part of the statute is void or trivial."  *Planned Parenthood Ariz., Inc. v. Mayes*, 257 Ariz. 110, 115 ¶ 15 (2024).

**¶22**         Whether the Committee's application sufficiently complied with statutory procedures is dictated by the plain statutory text and our supreme court's opinion in *Voice of Surprise v. Hall*, 255 Ariz. 510 (2023).

**¶23**         Under § 19-111(A), a referendum petition must "set[] forth . . . the text of the proposed law . . . or measure to be . . . referred[.]"  Our supreme court explained in *Voice of Surprise* that "including the challenged measure's text in the application notifies the public, including city officials and people interested in mounting their own referral effort, about what precisely is being challenged."  255 Ariz. at 515 ¶ 20.  Such notice is important "because the law permits the entirety or parts of a measure to be referred."  *Id.*  "In short, § 19-111(A) mandates compliance with the application requirements before the clerk issues a petition serial number." *Id.* at 515 ¶ 22.  "That did not occur here, making [the Committee's] application non-compliant from the start and incapable of correction after submission of the signed petition sheets on the thirtieth day after the [Prescott Valley Town Council] passed [the Ordinance]."  *See id.*

**¶24**         Whether the Committee's non-compliance with § 19-111(A) caused harm is irrelevant.  The legislature has mandated "that persons using the referendum process strictly comply with those constitutional and statutory requirements."  A.R.S. § 19-101.01.  Thus, "[w]e cannot excuse [the Committee's] omission as a harmless error on the ground that neither the [Town] Clerk nor individual petition signers were confused about which ordinance was the subject of the proposed referendum."  *Voice of Surprise*, 255 Ariz. at 516 ¶ 23.  Using a harmless error standard "would mean advancing a referendum effort that only substantially complied with

statutory requirements in violation of the legislative directive for strict compliance." *Id.*

¶25 The Committee does not really dispute anything we have said so far. Rather, it argues the superior court committed a legal blunder by requiring the Committee to submit a copy of the Ordinance at the exact moment it filed its application. As evidence the court did so, the Committee seizes on the court's conclusion that the Committee "did not *file* with the Town Clerk a copy of the Ordinance's 'text' *concomitantly* with its completed serial number application[.]" (Emphasis added). The Committee contends the court used the words "file" and "concomitantly" to mean the Ordinance had to be filed at the very second the application was.

¶26 The Committee's argument fails on a few levels. To begin, the Committee never made it in the superior court. That argument came only in a motion for reconsideration filed by an amicus curiae that the superior court struck as improper. So the argument is procedurally improper three times over. One, the motion for reconsideration is not part of the record, so the Committee cannot rely on it (at least not without challenging the order striking amicus's motion). Two, amici are not allowed to raise new issues, and their briefs may not "create, extend, or enlarge issues beyond those . . . argued by the parties." *Ruiz v. Hull*, 191 Ariz. 441, 446 (1998). Three, arguments made for the first time in a motion for reconsideration are waived. *Ramsey v. Yavapai Family Advocacy Ctr.*, 225 Ariz. 132, 137 ¶ 18 (App. 2010).

¶27 But even on its merits, the Committee's argument fails. Reading the court's findings and conclusions fairly and in context, it is evident the court found that the Committee's representatives left the Town Clerk's office on May 28 without filing a copy of the Ordinance. As explained, substantial evidence supports that finding. And there is no evidence the Committee's representatives ever returned to file the Ordinance. The court did not create a "simultaneous filing" requirement. The problem is not that the Committee did not file the Ordinance at the exact moment it filed its application; the problem is that the Committee *never* filed the Ordinance. The Committee's attempt to gin up a legal issue based on two words in the superior court's detailed and well-reasoned judgment, while creative, is unavailing. We affirm the court's conclusion that the Committee did not strictly comply with § 19-111(A).

## II.     As-Applied Constitutionality

¶28     We next consider whether requiring the Committee to strictly comply with § 19-111(A)'s requirements is unconstitutional in this case.

### A.     The Standard

¶29     "[R]eferendum procedures are a fundamental part of Arizona's scheme of government." *Fairness and Accountability in Ins. Reform v. Greene*, 180 Ariz. 582, 584 (1994). True, the legislature exercises legislative authority, but the people reserved "the power to approve or reject at the polls any Act, or item, section, or part of any Act of the Legislature." *Id.* at 584–85. And the Arizona Constitution "provided only a sketchy procedure for exercising" the referendum power. *Id.* at 585.

¶30     It thus fell to the legislature to fill the gaps. *Id.* Recognizing the legislature's authority to enact procedures for referendum, Arizona courts "have required strict compliance" with the legislature's statutory safeguards "to ensure that the constitutional right is not abused or improperly expanded." *W. Devcor, Inc. v. City of Scottsdale*, 168 Ariz. 426, 429 (1991). This strict compliance standard "requires nearly perfect compliance with constitutional and statutory referendum requirements." *Comm. for Pres. of Established Neighborhoods v. Riffel*, 213 Ariz. 247, 249 ¶ 6 (App. 2006).

¶31     Courts are ill equipped to decide whether statutory requirements for referendum are good policy. So litigants challenging the propriety of referendum procedures face an uphill battle. Such a litigant loses so long as a statute "reasonably supplements" and "does not unreasonably hinder" the referendum right. *Stanwitz v. Reagan*, 245 Ariz. 344, 347 ¶ 14 (2018) (quoting *Direct Sellers Ass'n v. McBrayer*, 109 Ariz. 3, 5 (1972)).

¶32     As best as we can tell, in the last fifty years, a litigant has satisfied the "reasonably supplements and does not hinder" standard only in two situations. First, when applying a statute directly conflicts with the Arizona Constitution. *See Turley v. Bolin*, 27 Ariz. App. 345, 349 (1976) (statute requiring initiative petitions to be filed at least five months before the election conflicted with a constitutional provision requiring petitions to be filed at least four months before); *Smith v. Fontes*, 260 Ariz. 201, __ ¶ 34(2025) (statutory formula for counting valid signatures in a petition was unconstitutional as applied because it required the proponents to collect more valid signatures than the Arizona Constitution requires).

¶33 Second, when complying with a statute was "impossible." *See Leibsohn v. Hobbs*, 254 Ariz. 1, 9 ¶ 32 (2022) (because the Secretary of State refused to accept for filing a statutorily required component of petition circulator registrations, enforcing the statute would be unconstitutional). This does not mean a party bringing an as-applied challenge must show that complying with a statutory procedure is impossible. But such a party must at least show that complying with such a procedure unreasonably hindered its ability to refer a law or measure to the ballot. *See Direct Sellers Ass'n*, 109 Ariz. at 5.

¶34 In sum, an as-applied challenge succeeds only when the statute conflicts with the Arizona Constitution or imposes an undue burden on the referendum proponent.

### B. The Standard Applied

¶35 Requiring a proponent to attach a copy of the ordinance to its serial number application is not unconstitutional as applied here.

¶36 The Arizona Constitution is silent on what must be attached to an application to start the referendum process. So requiring the Committee to file a copy of the Ordinance with its application is not inconsistent with the Arizona Constitution. *See Smith*, 260 Ariz. at __ ¶ 34.

¶37 And we agree with the superior court that the Committee "presented no evidence that strictly complying with A.R.S. § 19-111(A) . . . would have imposed *any* burden, let alone an unreasonable one." (emphasis in original); *see Castro*, 222 Ariz. at 51–52 ¶ 11. The Committee thus could not show that § 19-111(A) unreasonably hindered its ability to refer the Ordinance to the ballot. *See Direct Sellers Ass'n*, 109 Ariz. at 5.

¶38 The Committee makes three arguments meriting response. First, the Committee maintains that our supreme court in *Voice of Surprise* invited future parties to bring an as-applied challenge to § 19-111(A). In that opinion, the court commented that the referendum proponent had not argued that § 19-111(A) was "unconstitutional in its application." 255 Ariz. at 516 ¶ 23. The Committee posits that "the Arizona Supreme Court in *Voice of Surprise* placed a signpost for a future proponent in the very circumstances in which [the Committee] finds itself[.]" But the court merely observed that the referendum proponent did not make a particular argument. And it noted that the missing argument was this: requiring a referendum proponent to include the challenged ordinance's text unreasonably hindered or restricted the constitutional right of referendum. *Id.* Although the Committee here brought an as-applied challenge, it did

not show that requiring it to attach a copy of the Ordinance "unreasonably hindered or restricted" its constitutional rights. *Id.* As Evans puts it, "[t]he 'burden' of strict compliance would have involved about ten seconds and perhaps a paper clip."

**¶39** Second, the Committee asks us to determine § 19-111(A)'s constitutionality based on its utility in this case. The Committee argues requiring it to attach the Ordinance serves no purpose because everyone knew what measure it was attempting to refer. But the standard we apply does not turn on utility. It turns on whether strict compliance would impose an undue burden on petition proponents. *See Direct Sellers Ass'n*, 109 Ariz. at 5; *Stanwitz*, 245 Ariz. at 350 ¶ 24 (rejecting an as-applied challenge to a statute invalidating signatures collected by circulators who did not respond to subpoenas, reasoning that the petition proponents were not "unduly burdened" by the subpoenas); *Arrett v. Bower*, 237 Ariz. 74, 80 ¶ 20 (App. 2015) (invalidating a referendum when the proponents put the ordinance number in the field designated for the serial number because compliance would not "unnecessarily burden[ed]" the proponents); *Comm. for the Preservation of Neighborhoods v. Riffel*, 213 Ariz. 247, 250 ¶¶ 12–13 (App. 2006) (recognizing that the error at issue did not affect "electors' ability to comprehend the petition" or result in "fraud" but concluding that this court "cannot overlook the statutory requirements"). The undeniable upshot of the Committee's test would be to shift the burden to referendum opponents to show the proponent's error caused confusion.

**¶40** The Committee's test would also replace strict compliance with substantial compliance. According to the Committee, requiring strict compliance is unconstitutional if "the facts and circumstances show the objective of safeguarding the referendum process from abuse or improper expansion has been served." That is substantial compliance in everything but name. When reviewing for substantial compliance, courts "focus on whether the omission of information could confuse or mislead electors." *Malnar v. Joice*, 236 Ariz. 170, 172 ¶ 9 (2014) (cleaned up); *see also Pedersen v. Bennett*, 230 Ariz. 556, 559 ¶ 14 (2012) (explaining that substantial compliance examines whether the public may be "defraud[ed] or deceive[d]"); *Feldmeier v. Watson*, 211 Ariz. 444, 447 ¶ 14 (2005) (substantial compliance considers "the extent to which the petitions differ from the requirements, and the purpose of the requirements").

**¶41** The standard the Committee proposes is inconsistent with precedent and the notion that the "[b]urden is on him who attacks [the] constitutionality of legislation." *Giss v. Jordan*, 82 Ariz. 152, 158 (1957). It

would also replace strict with substantial compliance. We thus decline to adopt that standard.

**¶42** Third, the Committee claims the Town Clerk should have rejected its serial number application because it also did not include the Committee's statement of organization. *See* A.R.S. § 19-111(A). If the Town Clerk had done so, the Committee speculates that "[i]t is possible, and perhaps probable," the Committee "would have decided to include a copy of the Ordinance in [a later] submission[.]" The Committee thinks this "amplifies the hindrance to [its] ability to exercise its constitutional referendum right." It does no such thing. The Committee's counterfactual and hypothetical scenario does not demonstrate any hindrance to its constitutional rights or excuse its noncompliance with § 19-111(A). *See Leibsohn*, 254 Ariz. at 8 ¶ 29 (commenting that "rely[ing] on bad advice by the Secretary's office . . . would not have excused the [c]ommittee's noncompliance").

## CONCLUSION

**¶43** We affirm the judgment enjoining the Committee's referendum.

